UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

RALF JOHANN PIOTROWSKI,

                              Plaintiff,             Case # 18-CV-6075-FPG

v.                                                      DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

**INTRODUCTION**

Plaintiff Ralf Johann Piotrowski brings this action pursuant to the Social Security Act seeking review of the final decision of the Commissioner of Social Security that denied his application for Disability Insurance Benefits ("DIB") under Title II of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. § 405(g).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 11, 14. For the reasons that follow, the Commissioner's motion is GRANTED, Piotrowski's motion is DENIED, and the complaint is DISMISSED WITH PREJUDICE.

**BACKGROUND**

In July 2014, Piotrowski applied for DIB with the Social Security Administration ("the SSA"). Tr.[1] 10, 151. He alleged disability since September 1, 2013 due to post-traumatic stress disorder, severe depression, anxiety disorder, chronic migraines, irritable bowel syndrome, and arthritis in his ankles. Tr. 151, 191. On September 12, 2016, Administrative Law Judge William M. Manico ("the ALJ") held a hearing at which Piotrowski and a vocational expert ("VE")

---

[1] "Tr." refers to the administrative record in this matter. ECF No. 8.

testified. Tr. 31. On February 24, 2017, the ALJ issued a decision finding that Piotrowski was not disabled. Tr. 10-26. On November 30, 2017, the Appeals Council denied Piotrowski's request for review. Tr. 1-4. This action seeks review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of

impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ analyzed Piotrowski's claim for benefits under the process described above. At step one, the ALJ found that Piotrowski had not engaged in substantial gainful activity since the alleged onset date. Tr. 12. At step two, the ALJ found that Piotrowski has the following severe impairments: plano valgus deformity of the right foot, right tarsal tunnel syndrome with tibial nerve involvement, migraine headaches, restless leg syndrome, fracture of the left fibula status post casting, irritable bowel syndrome, anxiety disorder, affective disorder, and alcohol dependence. *Id.* At step three, the ALJ found that his impairments did not meet or medically equal any Listings impairment. Tr. 14-16.

Next, the ALJ determined that Piotrowski retains the RFC to perform sedentary work[2] with additional restrictions. Tr. 16. Specifically, Piotrowski can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl; cannot climb ladders, ropes, or scaffolds; must avoid concentrated exposure to noise and hazards; can perform unskilled work where interactions with others are occasional and related to the work performed; must take a break approximately every two hours; and cannot perform fast-paced assembly work. *Id.*

At step four, the ALJ found that Piotrowski cannot perform his past relevant work. Tr. 24. At step five, the ALJ relied on the VE's testimony and found that Piotrowski can adjust to other work that exists in significant numbers in the national economy given his RFC, age, education, and work experience. Tr. 25-26. The VE testified that Piotrowski can work as an inspector, circuit

---

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

4

board assembler, and lens inserter. *Id.* Accordingly, the ALJ concluded that Piotrowski is not disabled. Tr. 26.

II. **Analysis**

Piotrowski argues that the ALJ's decision is erroneous on five grounds. First, the ALJ failed to develop the record when he did not obtain the treatment notes of Sarah Lechner, LCSW, and Heather Noto, LMHC. Second, the ALJ did not provide good reasons for rejecting the opinions of Muhammad Dawood, M.D.—one of Piotrowski's treating physicians. Third, the ALJ wrongly rejected Ms. Noto's opinions. Fourth and fifth, the ALJ incorrectly evaluated the functional limitations associated with Piotrowski's neurogenic bladder condition[3] and migraine headaches. The Court discusses each argument in turn.

   a. **Duty to Develop the Record**

Beginning in September 2013, Piotrowski received mental health treatment and therapy through United Health. Tr. 249-61. The treatment concerned depression, alcohol dependence, anxiety, and posttraumatic stress disorder. *Id.* Initially, he received therapy with Ms. Lechner, a licensed social worker, and medication from Dr. Dawood. Tr. 249-61, 316-320. In fall 2015, Ms. Noto, a licensed mental health counselor, began conducting Piotrowski's therapy. *See* Tr. 685, 692-696.

The SSA requested and obtained records from Unity Health related to Piotrowski's mental health treatment. In total, these records cover the period between September 2013 and June 2016. Tr. 261, 719. As is relevant for Piotrowski's argument, these records include individual appointment notes authored by Ms. Lechner from September 2013 to August 2014. *See* Tr. 221-

---

[3] "Neurogenic bladder is a term applied to urinary bladder malfunction due to neurologic dysfunction emanating from internal or external trauma, disease, or injury." Bradley C. Gill, M.D., *Neurogenic Bladder*, MEDSCAPE (Dec. 6, 2018), https://emedicine.medscape.com/article/453539-overview (last visited May 24, 2019).

261. After that, there are no individual appointment notes for Piotrowski's therapy; instead, there are periodic "Treatment Plan Reviews," which summarize the goals and progress of Piotrowski's therapy over a months-long timeframe. *See, e.g.*, Tr. 644-48, 656-60. During the administrative process, neither Piotrowski's representative nor the ALJ identified the absence of individual treatment notes as a gap in the record.

Piotrowski contends that Ms. Lechner's and Ms. Noto's individual treatment notes from August 2014 to June 2016 are "potentially" missing from the record. ECF No. 11-1 at 22. Piotrowski is not certain that these notes actually exist. But, given that Ms. Lechner completed individual appointment notes before August 2014 and that Piotrowski continued to have therapy twice per month through 2016, Piotrowski surmises that "almost 2 years of individual mental health treatment sessions . . . are missing from the record." *Id.* On that basis, Piotrowski asserts that the ALJ failed to develop the record.

Because Social Security proceedings are inquisitorial rather than adversarial, *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000), "the social security ALJ, unlike a judge in a trial, must on behalf of all claimants . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Moron v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks and citation omitted). The ALJ bears this affirmative duty "even when the claimant is represented by counsel." *Sotososa v. Colvin*, No. 15-CV-854, 2016 WL 6517788, at *4 (W.D.N.Y. Nov. 3, 2016). Therefore, before making a disability determination, the ALJ must develop a claimant's complete medical history. *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996); *see also Mauzy v. Colvin*, No. 5:12-cv-866, 2014 WL 582246, at *5 (N.D.N.Y. Feb. 13, 2014) ("[A]dministrative law judges, as fact finders, may not automatically rely on [the] absence of probative evidence 'without making an affirmative effort to fill any gaps in the record.'" (internal

citation omitted)). "Remand is warranted if the ALJ fails to fulfill his or her duty to develop the record." *Sotososa*, 2016 WL 6517788, at *3. "On the other hand, where there are no 'obvious gaps' in the record and a 'complete medical history' exists, the ALJ is not obligated to seek additional evidence." *Id.*

Here, the Court is not persuaded that the ALJ failed to develop the record. In the first place, the alleged gap that Piotrowski identifies is not obvious. The agency requested records from Unity Health, and it ultimately received extensive records covering almost three years of mental health treatment. *See* Tr. 221-61, 308-20, 636-719. While Piotrowski's therapy records changed from individual appointment notes to longer-term summaries of treatment, the summaries still describe the objectives and progress of his therapy. *See, e.g.*, Tr. 644-49. Furthermore, Piotrowski's representative supplemented these records with four "employability assessment" forms authored by Dr. Dawood and Ms. Noto, which further track the progress of Piotrowski's treatment. *See* Tr. 213, 788-95. Thus, even assuming that additional individual treatment notes exist, because the records are so robust, the Court cannot conclude that the ALJ "should have known that [Unity Health's] response was incomplete." *Drake v. Astrue*, 443 F. App'x 653, 656 (2d Cir. 2011) (summary order).

Put differently, this is not a case where records pertaining to a course of treatment are wholly absent. In *Sotososa v. Colvin*, for example, this Court found a clear gap in the record where the claimant testified that he received counseling at a facility but "there were no treatment notes regarding these sessions in the record." *Sotososa*, 2016 WL 6517788, at *3. By comparison, in this case there were numerous records related to Piotrowski's therapy at Unity Health, and they adequately show the nature and progress of his treatment. That some records were summaries, rather than individual appointment notes, is not dispositive. *See Blackman v. Berryhill*, No. 16-

CV-869, 2018 WL 3372963, at *4 (W.D.N.Y. July 11, 2018) ("[T]he presence of summaries rather than individual treatment notes in mental health treatment records is not necessarily an indication that the record as a whole is incomplete."). Accordingly, notwithstanding the alleged absence of some treatment notes, there was not an obvious gap in the record and the ALJ had a complete medical history on which to base his decision.

### b. Evaluation of Dr. Dawood's Opinions

Piotrowski next claims that the ALJ failed to provide good reasons for rejecting Dr. Dawood's opinions. In September 2014 and June 2015, Dr. Dawood completed "employability assessment" forms on Piotrowski's behalf. Tr. 788-91. In both, he opined that Piotrowski could only work up to five hours per week because of his mental health conditions. Tr. 789, 791. The ALJ afforded Dr. Dawood's opinions limited weight. Tr. 23. The ALJ reasoned that there was "little in the medical record that would suggest [Piotrowski's] mental impairments prevent him from working more than five hours," and he found the extreme limitation inconsistent with Dr. Dawood's opinion that Piotrowski had moderate to no limitations in his mental functioning. Tr. 23, 789, 791.

Piotrowski challenges the ALJ's reasoning solely based on his first argument—that the ALJ failed to develop the record. He asserts that "where the ALJ relies on the absence of records [to discount a treating physician's opinion] . . . this reason cannot constitute a requisite 'good reason.'" ECF No. 11-1 at 25. Piotrowski suggests that the missing mental health records could "potentially provide the support required to allow the ALJ to give great or controlling weight" to Dr. Dawood's opinions. *Id.*

Given that the Court has already rejected the premise of Piotrowski's argument, this argument requires only brief discussion. Piotrowski is correct that an ALJ must give "'good

8

reasons' for not crediting the opinion of a claimant's treating physician." *Durrant v. Berryhill*, No. 16-CV-6781, 2018 WL 1417311, at *4 (W.D.N.Y. Mar. 22, 2018). Moreover, an ALJ must fill any clear gaps in the record before rejecting a treating physician's opinion. *See, e.g.*, *Trancynger v. Comm'r of Social Sec.*, 269 F. Supp. 3d 106, 123 (S.D.N.Y. 2017). The latter rule is inapposite, however, because the ALJ had a full record before him. *See id.* Similarly, the ALJ articulated valid reasons for discounting Dr. Dawood's opinions. *See Bryant v. Berryhill*, No. 16-CV-6109, 2017 WL 2334890, at *5 (W.D.N.Y. May 30, 2017) ("[A]n ALJ is entitled to discount a medical opinion that he or she finds inconsistent with the record as a whole."); *Garrett v. Comm'r of Social Sec.*, No. 17-CV-1009, 2019 WL 2163699, at *5 (W.D.N.Y. May 17, 2019) (ALJ could properly afford less weight to treating physician's opinion where, *inter alia*, it was not supported by physician's own treatment records). Piotrowski does not otherwise challenge those reasons. *See* ECF No. 11-1 at 23-26. Accordingly, remand is not required.

### c. Evaluation of Ms. Noto's Opinion

Piotrowski's argument with respect to Ms. Noto's opinions fails on similar grounds. In December 2015, Ms. Noto opined that Piotrowski was moderately to very limited in all areas of mental functioning. Tr. 793. And in both her December 2015 and May 2016 opinions, Ms. Noto stated that Piotrowski could only work in low-demand, low-pressure environments. Tr. 793, 795. The ALJ afforded little weight to Ms. Noto's "assessment of [Piotrowski's] functional abilities" because it was inconsistent with the record and because Ms. Noto is not an acceptable medical source. Tr. 24. Piotrowski argues that the ALJ's failure to develop the record undermines his evaluation of Ms. Noto's opinions. This argument fails for the reasons discussed in the preceding sections.[4]

---

[4] In addition, Piotrowski argues that "[t]he ALJ's assumption that a treating therapist can only be entitled to 'little weight' by virtue of her professional title is an error." ECF No. 11-1 at 27. The Court does not

#### d. Piotrowski's Neurogenic Bladder Condition

By way of background, Piotrowski appears to have struggled with urinary incontinence since at least 2012. *See* Tr. 420. In March 2014, he reported to his primary care physician that the problem was "getting more frequent." *Id.* In subsequent months, Piotrowski tried medication to no avail, and he ultimately needed to use a catheter three times per day. Tr. 563, 595. But, by September 2015, Piotrowski's symptoms had improved after diet and medication changes. Tr. 556. He reported "improvement of his daytime frequency, incontinence, sensation of incomplete bladder emptying . . . [and] urgency and weak urinary stream." *Id.* Piotrowski discontinued using a catheter at that time. *Id.* Relying on these later records, the ALJ concluded at step two that Piotrowski's neurogenic bladder condition was under control and did not constitute a severe impairment. Tr. 13-14.

Piotrowski asserts that the ALJ erred by concluding that his neurogenic bladder condition was not a severe impairment. ECF No. 11-1 at 29-31. He cites treatment records from 2014 that in his opinion show "there are absolutely functional limitations involved with this impairment which would affect [him] in a work environment." *Id.* at 30. But, even if the ALJ incorrectly concluded that the neurogenic bladder condition was non-severe, the Court is not persuaded that Piotrowski's argument justifies remand.

At step two of the disability analysis, the ALJ considers the medical severity of the claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii). A "severe impairment" is "any

---

agree with Piotrowski's interpretation of the ALJ's decision. The ALJ did not state that he *must* give little weight to a non-acceptable medical source, only that Ms. Noto's status provided additional *support* for his conclusion that her opinions were entitled to little weight. *See* Tr. 24; *see also Davis v. Comm'r of Social Sec.*, No. 17-CV-54, 2018 WL 1061449, at *8 (D. Vt. Feb. 26, 2018) (ALJ could reasonably afford less weight to opinions of counselors and social workers "in part because they were not acceptable medical sources"). An ALJ may give less than controlling weight to a non-acceptable medical source where, as here, he adequately addresses and discusses the opinion. *Saxon v. Astrue*, 781 F. Supp. 2d 92, 104 (N.D.N.Y. 2011).

impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 404.1521. "Basic work activities" are "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). It is the claimant's burden to present evidence that establishes the severity of his impairment. 20 C.F.R. § 404.1512(c). The claimant must demonstrate "that the impairment has caused functional limitations that precluded him from engaging in any substantial gainful activity for one year or more." *Perez v. Astrue*, 907 F. Supp. 2d 266, 272 (N.D.N.Y. 2012). A finding of "not severe" should be made if the medical evidence establishes only a slight abnormality that would have no more than a minimal effect on an individual's ability to work. *Id.* at 271; *see also* S.S.R. 85-28, 1985 WL 56858, at *3 (S.S.A. Jan. 1, 1985).

Importantly however, "[a]n error at step two—either a failure to make a severity determination regarding an impairment, or an erroneous determination that an impairment is not severe—can be harmless error if the ALJ continues the analysis and considers all impairments in [his] RFC determination." *Sech v. Comm'r of Social Sec.*, No. 7:13-CV-1356 GLS, 2015 WL 1447125, at *3 (N.D.N.Y. Mar. 30, 2015). In other words, remand is not required if the putative error does not prejudice the claimant at subsequent steps of the evaluation process. *Swanson v. Astrue*, No. 10-CV-217, 2011 WL 2582617, at *8 (D. Vt. June 29, 2011); *see also Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (summary order).

Here, viewing the ALJ's decision as a whole, the Court is satisfied that the ALJ reasonably considered Piotrowski's neurogenic bladder condition when reaching his RFC determination. *Cf. Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) ("When . . . the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have . . . explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of

disability."). In explaining the legal standard, the ALJ noted that he would consider both severe and nonsevere impairments when he determined Piotrowski's RFC. Tr. 11. At step two, the ALJ discussed Piotrowski's neurogenic bladder condition and the evidence showing that it was controlled. Tr. 14. He concluded that the condition did not cause more than a minimal limitation in Piotrowski's ability to function. Tr. 13. Then, in assessing Piotrowski's RFC, the ALJ discussed the bladder condition in the context of evaluating the consultative opinion of Harbinder Toor, M.D. *See* Tr. 18-19, 23-24. The ALJ gave great weight to Dr. Toor's opinion, which did not contain any limitations related to Piotrowski's bladder condition. *See* Tr. 19, 24, 471.

Taken together, the Court can glean that the ALJ found that the bladder condition did not pose any functional limitations for purposes of Piotrowski's RFC. *See Diakogiannis v. Astrue*, 975 F. Supp. 2d 299, 311-12 (W.D.N.Y. 2013) (stating that a step-two error is harmless "when it is clear that the ALJ considered the claimant's [impairments] and their effect on his or her ability to work during the balance of the sequential evaluation process"). And contrary to Piotrowski's argument, this conclusion was reasonable: while Piotrowski had some initial difficulties related to urinary incontinence, medication and lifestyle changes improved his condition. Tr. 556. Although Piotrowski cites evidence that arguably supports more restrictive limitations, he does not articulate how the ALJ's finding of improvement was erroneous. *See Gonzalez-Cruz v. Comm'r of Social Sec.*, 294 F. Supp. 3d 164, 187 (W.D.N.Y. 2018) ("[U]nder the substantial evidence standard of review, it is not enough for [p]laintiff to merely disagree with the ALJ's weighing of the evidence or *to argue that evidence in the record could support [his] position*." (emphasis added)). Remand is not warranted.

### e. Piotrowski's Migraine Headaches

Finally, Piotrowski asserts that the ALJ erroneously failed to include functional limitations related to his migraine headaches. Relying on his hearing testimony and some treatment notes, he argues that his headaches are severe enough—even with treatment—to warrant a more restrictive RFC. The Court is not persuaded.

As Piotrowski points out, there is evidence in the record suggesting that his migraine headaches can be extremely debilitating. At the hearing, Piotrowski testified that, before treatment, he would have migraines nearly every day and would need to lay down for hours at a time. Tr. 42, 47. He also testified that he has trouble concentrating and standing and that lights affect him. Tr. 46-47. Piotrowski's medical records show that he began having near-daily migraines in mid-2013. Tr. 297, 300. In April 2014, Piotrowski began taking Botox injections. Tr. 292, 295-96. Over the next two years, Piotrowski continued to have frequent headaches that were not as severe. *See, e.g.*, Tr. 740. But by November 2015, his migraines were controlled with the Botox injections and his condition was described as stable. Tr. 759-60. In May 2016, Piotrowski reported that the injections were "working well." Tr. 766. The treatment notes also state that Piotrowski has a "headache shortly after Botox is given but otherwise rare headache needing treatment." *Id.*

The ALJ did not find that Piotrowski's migraine headaches caused significant functional limitations. Tr. 16, 18, 20. The only relevant non-exertional limitations he identified were that Piotrowski should avoid concentrated exposure to noise and hazards, could only occasionally interact with others, could perform unskilled work, would need a regular work break every two hours, and could not perform fast-paced assembly work. Tr. 16. With respect to his headaches,

the ALJ found that treatment improved and stabilized his symptoms. Tr. 18, 20. He therefore rejected Piotrowski's claims of severe pain and disability due to headaches. Tr. 20-21.

Like his previous argument, while Piotrowski identifies some evidence to show that his migraine headaches caused significant functional limitations, he fails to establish that the ALJ could not reasonably arrive at a contrary conclusion in light of other evidence in the record. The ALJ noted that there was conflicting evidence as to the severity of Piotrowski's headaches. Tr. 20-21. After reviewing the record, the ALJ found that those headaches were well controlled with treatment such that they did not pose significant functional limitations. *See* Tr. 18, 20. The ALJ's conclusion finds substantial support in the record: by May 2016, Piotrowski reported that the Botox injections were "working well" and that he rarely had headaches that required treatment. Tr. 766. The mere fact that other evidence could support a different conclusion is not enough to warrant remand. *See Gonzalez-Cruz*, 294 F. Supp. 3d at 187. Rather, this Court must defer to the Commissioner's resolution of conflicting evidence where, as here, "that resolution is supported by substantial evidence." *Marc C. v. Comm'r of Social Sec.*, No. 17-CV-1096, 2018 WL 6830839, at *8 (N.D.N.Y. Dec. 27, 2018); *see also Vilardi v. Astrue*, 447 F. App'x 271, 272 (2d Cir. 2012) (summary order) ("[E]ven assuming that [the claimant's] conditions have arguable support in the record, the ALJ's decision—to accord more weight to substantial evidence that conflicted with [the claimant's] treating physician's opinion and her alleged symptoms—cannot be disturbed.").

## CONCLUSION

For all of the reasons stated, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 14) is GRANTED and Plaintiff's Motion for Judgment on the Pleadings (ECF No. 11) is DENIED. The complaint is DISMISSED WITH PREJUDICE, and the Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: May 28, 2019
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court